**E-FILED**
Friday, 24 August, 2007  03:11:03 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

NICOLE NEAL                                     )
                                                )
          Plaintiff,                   )
                                                )
    v.                                      )        Case No. 06-1289
                                                )
KEYSTONE STEEL AND WIRE, A                      )
DIVISION OF KEYSTONE                            )
CONSOLIDATED INDUSTRIES, INC.,                  )
                                                )
          Defendants.                  )

## ORDER

This matter is now before the Court on a Motion for Summary Judgment [#12] and

Motion to Strike [#18] by Defendant Keystone Steel and Wire.  For the reasons set forth below,

both Motions are DENIED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims

asserted in the Complaint present federal questions under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.*

## BACKGROUND

This Title VII lawsuit is now before the Court in a somewhat atypical posture.  Plaintiff

Nicole Neal ("Neal")[1] was employed by Defendant Keystone Steel and Wire ("Keystone") from

July 1998 through May 2002, when she was discharged.  In September 2002, she filed charges

with the Equal Employment Opportunity Commission, alleging that she was subjected to a

---

[1] During Plaintiff's employment with Keystone, and for some time after, Plaintiff's name was Nicole Clark.  She has
since married and her married name is Nicole Neal.  While some documents referenced herein identify Plaintiff as
Nicole Clark, this Court will refer to her only as Nicole Neal, for purposes of consistency.

hostile work environment because of her race and gender, and was ultimately discharged for

complaining about the discrimination.  Neal received a Notice of Right to Sue from the EEOC on

August 25, 2004.  Under ordinary circumstances, Neal would be required to file her suit within

90 days of receipt of the Notice of Right to Sue.  However, on February 16, 2004, between the

time Neal filed EEOC charges and received the Notice of Right to Sue, Keystone filed for

bankruptcy.  Accordingly, any attempt to collect against Keystone would have violated the

automatic stay provisions of 11 U.S.C. § 362(a).

In the same interim, between the filing of EEOC Charges and the issuance of the Notice

of Right to Sue, Neal filed a personal Chapter 7 bankruptcy, on December 2, 2002.  Neal failed

to list her claim against Keystone as an asset in her bankruptcy schedules or statement of

financial affairs.  She was granted a discharge on March 17, 2003, more than a year before

receiving the Notice of Right to Sue, and her case was closed as a "no asset case."

On June 21, 2004, Neal filed a proof of claim in Keystone's bankruptcy.  Keystone

objected to Neal's claim on November 15, 2004.  Keystone's Bankruptcy Plan became effective,

and accordingly the automatic stay was lifted, on August 31, 2005.  As is provided for by § 524

of the Bankruptcy Code, the Bankruptcy Plan enjoined claimholders from commencing or

continuing any action or proceeding on account of their claims against Keystone.  Specifically,

Keystone's Bankruptcy Plan stated,

> Except as otherwise expressly provided in the Plan, all Persons and Entities that
> have held, hold or may hold Claims[2] against . . . the Debtors are permanently
> enjoined, from and after the Effective Date, from taking any of the following
> actions against any of the Debtors . . . on account of any Claims . . .  arising from
> events prior to the Effective Date: (i) commencing or continuing in any manner
> any action or other proceeding of any kind . . .

---

[2] Under the Plan, "Claim" means a claim against the Debtors, "including, but not limited to: (a) any right of payment
from any Debtor whether or not such right is reduced to judgment, liquidated . . . disputed, undisputed . . ."
Bankruptcy Plan, Pl.'s Ex. 4, at 3.

Bankruptcy Plan, Def.'s Ex E-2, at 39; *see also* 11 U.S.C. § 524(a).

As of August 31, 2005, the Effective Date, Neal's claim was still unresolved. While Neal had filed a response to Keystone's objection, Keystone had repeatedly failed to address Neal's claim at any of the prior hearings on the claim objections, and the first substantive hearing on the objection to Neal's claim was not held until November 9, 2005, at which the parties advised that they were attempting to reach settlement. The Bankruptcy Court provided additional time to allow the parties to resolve the amount of the claim.

In January 2006, Neal informed the trustee of her closed Chapter 7 bankruptcy that she had inadvertently failed to list the discrimination claim in her statement of financial affairs or schedules. The Chapter 7 trustee promptly moved to reopen the case and notified Neal's creditors of a potential distribution. In March 2006, the Chapter 7 trustee authorized Attorney Patricia Benassi to represent the bankruptcy estate in pursuing Neal's discrimination claims against Keystone.[3]

At a May 30, 2006, status conference, the parties informed the Bankruptcy Court presiding over Keystone's Chapter 11 that they could not reach a settlement, and Keystone subsequently argued that Neal's proof of claim should be disallowed on the basis of judicial estoppel, focusing on the fact that Neal initially failed to list the claim on her own bankruptcy schedules and statement of financial affairs. By written ruling, the Bankruptcy Court for the Eastern District of Wisconsin, Honorable Susan V. Kelley presiding, held that while Neal should have included even the contingent claim on her own bankruptcy schedules, the doctrine of judicial estoppel did not apply to bar the claim by Neal's trustee or Neal herself. Memorandum Decision on Application of Judicial Estoppel to Claim No. 1285 by Nicole Clark, Pl.'s Ex. 3, at 6-8. The bankruptcy court concluded that Neal's claim was allowed.

---

[3] For simplicity, the Court will refer to the plaintiff as Neal, even if it may technically be Neal's bankruptcy estate.

On September 21, 2006, Neal moved for the bankruptcy court to transfer of the matter to district court and lift the injunction for purposes of liquidating the claim.  In response, Keystone did not object to the lifting of the injunction and the transferring of the claim, subject to several conditions, including that Neal file her Complaint in District Court within 30 days.  Keystone's Resp. to Neal's Mtn to Transfer, Pl.'s Ex. 9, at 2.

On October 13, 2006, the Bankruptcy Court granted the motion to lift the injunction and transfer, ruling that after the claim is liquidated in this District Court, the matter will return to Bankruptcy Court, and the amount of Neal's unsecured claim in Keystone's bankruptcy case will be the amount, if any, awarded here.  Order Granting Motion to Transfer Venue and Lift Injunction, Pl.'s Ex. 10.

Neal filed the instant action on November 9, 2006, alleging that Keystone subjected her to a hostile work environment because of her race and gender, and ultimately terminated her in retaliation for complaining about the discrimination.  Long before the close of discovery, Keystone filed a Motion for Summary Judgment, arguing that it is entitled to judgment as a matter of law because Neal's claims are barred by the Title VII period of limitations and applicable sections of the Bankruptcy Code affecting the period of limitations.  Tangential to the Motion for Summary Judgment, Keystone has also moved to strike an exhibit—a written offer of settlement from Keystone—submitted by Neal in her Response to Keystone's Motion for Summary Judgment.  Both Motions are fully briefed, and this Order follows.

**MOTION FOR SUMMARY JUDGMENT**

**I. Standard of Review**

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is

4

no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of

informing the Court of portions of the record or affidavits that demonstrate the absence of

a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may

meet its burden of showing an absence of disputed material facts by demonstrating "that

there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Any

doubt as to the existence of a genuine issue for trial is resolved against the moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139,

1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of

presenting specific facts to show that there is a genuine issue of material fact. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil

Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce

evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324.  In other words, the non-moving

party "must do more than simply show there is some metaphysical doubt as to the material

facts." *Matsushita*, 475 U.S. at 586.  Nevertheless, this Court must "view the record and all

inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v.*

*Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989).  Summary judgment will be

denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928,

931 (7th Cir. 1995).

**II**. **Discussion**

Keystone argues that it is entitled to judgment as a matter of law because Neal's Title VII

claims are barred by the statute of limitations in that Neal did not file her lawsuit within 90 days

of the lifting of the automatic stay in Keystone's bankruptcy, as allegedly required by the

Bankruptcy Code.  In response, Neal argues that even after the automatic stay was lifted, she was

legally prevented from filing her claim by statute and court order, that she did file as soon as she

was legally able to do so, and that therefore the 90-day period of limitations should be equitably

tolled.  A full account of the parties' positions demands explanation of several applicable

statutes.

It is well-established that a plaintiff must file an action for discrimination within 90 days

of receiving a right to sue letter from the EEOC, absent special circumstances.  *See Velasco v.*

*Illinois Dep't of Human Servs*., 246 F.3d 1010, 1018 (7th Cir. 2001).  Here, however, Keystone

was in an active Chapter 11 bankruptcy during Neal's entire 90-day window—from August 25,

2004, through November 23, 2004—and therefore the automatic stay provisions of 11 U.S.C. §

362 prevented any judicial proceeding or other act against Keystone's property that was or could

have been commenced before the filing of the petition or to recover a claim against Keystone

that arose before the filing of the petition.  The parties do not dispute that Neal was barred from

initiating any action against Keystone during the 90 days following receipt of her Notice of Right

to Sue from the EEOC.

Section 108(c) of the Bankruptcy Code provides for an extension of certain non-

bankruptcy statutes of limitations that expired while the automatic stay was pending.  The

section provides, in relevant part:

> Except as provided in section 524 of this title, if applicable nonbankrtupcy
> law . . . fixes a period for commencing or continuing a civil action in a court other

6

than a bankruptcy court on a claim against the debtor . . . and such period has not
expired before the date of the filing of the petition, then such period does not
expire until the later of –

      (1) the end of such period, including any suspension of such period
          occurring on or after the commencement of the case; or

      (2) 30 days after notice of the termination or expiration of the stay . . .
          with respect to such claim

11 U.S.C. § 108(c).  "Recognizing that a petition in bankruptcy could sometimes give a debtor

unfair advantage over a claimant by allowing the debtor to remain under the protection of the

automatic stay until the limitation period governing the claims expired," Congress, in enacting §

108(c), "acted to solidly preserve the rights of a party stayed from commencing or continuing an

action against the debtor because of the bankruptcy case."  *In re Morton*, 966 F.2d 561, 566 (2d

Cir. 1989).

      In this case, Keystone's confirmed bankruptcy plan became effective on August 31,

2005, and the automatic stay was lifted on that date.  Therefore, Keystone argues, under §

108(c), Neal had either 30 days to file her suit or, at the most, 90 days, if the 90-day period of

limitations which had passed during the pendency of the automatic stay could be considered

"suspended" within the meaning of 108(c)(1).[4]  Because Neal did not file until November 9,

2006, or 435 days until after the automatic stay was lifted, Keystone argues that her claims are

time-barred.

      In response, Neal admits that she received notice of the termination of the stay and did

not file her suit within either 30 or 90 days.  She disputes, however, that she was "free to file her

Title VII claim" once the stay was lifted.  Neal argues that the terms of the confirmed plan and

---

[4] "Apart from the 30-day period under § 108(c)(2), this section by itself 'does not provide for tolling of any
externally imposed time bars ... rather, this language merely incorporates suspension of deadlines that are expressly
provided in *other* federal or state statutes.'" *In re Confidential Investigative Consultants, Inc.*, 178 B.R. 739, 749
(Bankr. N.D. Ill. 1995) (quoting *Aslandis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993)).  The Court need not
investigate whether another federal or state statute provides for suspension of the 90-day period of limitations if
prosecution of the cause of action is stayed by bankruptcy, as Neal filed this suit hundreds of days after the
automatic stay was lifted.

the bankruptcy code enjoined her from filing the lawsuit any earlier.  Because the injunction

prevented the initiation of the suit, Neal argues that the statute of limitations must be equitably

tolled until the time the bankruptcy court lifted the injunction.

Section 1141(a) of the Bankruptcy Code provides that a confirmed plan binds any

creditor whether or not the claim or interest of such creditor is impaired under the plan and

whether or not such creditor has accepted the plan.  *See* 11 U.S.C. § 1141(a).  The confirmation

of a plan discharges the debtor from any debt that arose prior to the date of confirmation.  *Id.* at §

1141(d)(1)(A).  Such debts are discharged regardless of whether a proof of claim on such debt

was filed or whether the claimant accepted the plan.  *Id*.  Furthermore, the Bankruptcy Code

provides that a discharge operates as an injunction against the commencement or continuation of

an action to collect a discharged debt.  *See* 11 U.S.C. § 524(a)(2).

In this case, the Confirmation order mirrors the injunction language of § 524, stating

"[E]xcept as otherwise expressly provided in the Plan, all Persons and Entities that have held,

hold or may hold Claims against  . . . the Debtors are permanently enjoined, from and after the

Effective Date, from taking any of the following actions against any of the Debtors . . . on

account of any Claims . . . arising from events prior to the Effective Date: (i) commencing or

continuing in any manner any action or other proceeding of any kind . . . ."

Keystone asserts that it is entitled to judgment as a matter of law because neither the

Plan's injunction nor the Bankruptcy Code could operate to toll or extend the period of

limitations beyond the period set forth in 108(c). In order to properly address Keystone's

argument, the Court must first decide whether the Title VII limitations period could be tolled or

extended after the automatic stay was lifted, other than as provided for in § 108(c).  In other

words, does 108(c) preclude further equitable tolling?  If § 108(c) does not provide such a bar, is

equitable tolling appropriate under the factual circumstances of this case?

### A.  Do the Provisions of § 108(c) Foreclose the Possibility of Further Extension or Tolling of the Title VII Period of Limitations?

Keystone argues that the "unambiguous filing deadline set forth in § 108(c)" cannot be

extended simply because Neal believed that she was prevented from filing suit by both the Plan's

injunction and by § 524 of the Bankruptcy Code.  Def.'s Reply, at 8.  In support of its position,

Keystone relies on the recent decision of *In re WorldCom, Inc*., 362 B.R. 96 (Bankr. S.D.N.Y.

2007).

In *WorldCom*, the creditor held a mechanics lien on the debtors' property.  362 B.R. at

102.  The debtors argued that the lien had lapsed, however, when the creditor failed to bring a

suit to foreclose the Lien with the time period required by state law.  *Id*.  The creditor argued that

"as a result of the automatic stay of section 362, section 108(c) tolled the Statute of Limitations

[regarding the foreclosure action] until 30 days after the Effective Date."  *Id.*  Further, the

creditor argued that "subsequent to Effective Date, section 108(c) tolls the Statute of Limitations

because the Plan's injunction enjoins [the creditor] from commencing Foreclosure Action."  *Id*.

The bankruptcy court rejected the creditor's argument that the Plan's injunction

continued the tolling of section 108(c), thereby "extending the automatic stay past the Effective

Date."  *Id*. at 110.  The Court noted that the injunction is premised upon §§ 1141 and 524, but §

108(c) extends the time period for taking action that was stayed only by §§ 362, 922, 1201, or

1301.  *Id*.  Because the language of § 108(c) limits the automatic extension to the four sections

enumerated in the statute, "expanding the tolling of section 108(c) to include an injunction based

on a section not enumerated [would rewrite] section 108(c) to include a provision that is

'inconsistent with the language of the statute.'"  *Id*. (quoting *Smith v. Lachter*, 293 B.R. 220, 224

(B.A.P. 9th Cir. 2003).  The bankruptcy court concluded,

> [T]he Plan's injunction did not continue or reinstate the tolling section of 108(c).
> On the Effective Date, the automatic stay section 362 was lifted and, as such,
> section 108(c) tolled the need to commence a Foreclosure Action for 30 days after
> the Effective Date.  [The creditor] was required to institute the Foreclosure
> Action.  [The creditor] was required to seek the Court's permission to institute the
> Foreclosure Action or for the Court to provide other relief.  However, [the
> creditor] failed to request any relief.  No state or federal statute relieved [the
> creditor] from commencing the Foreclosure Action to prevent the Lien from
> lapsing 30 days after the Effective Date.

*Id*. at 110-11.

In response, Neal argues, and the Court agrees, that *WorldCom* is not precisely on point,

as Keystone insists.  Granted, the factual circumstances of that case are, in many ways, highly

comparable to the dispute now before the Court, and the ultimate result sought—additional time

to bring an action whose statute of limitations otherwise expired during the pendency of the

automatic stay—is the same.  However, plaintiff Neal has not made the same arguments for

relief as the creditor in *WorldCom*, and the Court finds the difference to be significant.  In

*WorldCom*, the creditor plaintiff argued that the plan's injunction extended *the automatic stay*

and continued the statutory tolling of § 108(c).  *Id*. at 102.  This argument was legally precluded

by the precise language of § 108(c); extending the automatic statutory tolling of § 108(c) to

include the time during the pendency of an injunction based on a section that was not enumerated

in § 108(c) would be inappropriate.  *Id*. at 110.

Here, however, Neal does not argue that the time limits provided for in § 108(c) should

be extended because of a bar to suit imposed by a section of the code not enumerated in § 108(c).

Instead, Neal argues that the doctrine of equitable tolling should extend the statute of limitations

on her Title VII claim because, while she did file more than 807 days after receiving the notice

10

of right to sue, first the automatic stay, and then the Plan's injunction and the injunction of § 524, prohibited her from filing earlier.

Neal's argument is not precluded by the precise holding of *WorldCom*.  In fact, in *Montoya v. U.S.*, 965 F.2d 554 (7th Cir. 1992), the Seventh Circuit ruled that a nonbankruptcy statute of limitations may be tolled by proceedings in the bankruptcy other than as provided for in § 108 as a consequence of an automatic stay.  In *Montoya*, the debtors first filed a Chapter 11 bankruptcy, which was pending for more than three years, and then filed a Chapter 7 bankruptcy. *Id*. at 55.  In their Chapter 7, the debtors sought to discharge I.R.S. assessments against them for unpaid taxes that were more than three years old, because under the Bankruptcy Code, only taxes due within three years of the bankruptcy petition are non-dischargeable.  *Id*.  The Court recognized, however, that the three-year "look-back period" during which the I.R.S. had to collect the taxes was affected by the automatic stays imposed by the two bankruptcies, and § 108(c) extended the time creditors, including the I.R.S., have to collect claims that have been stayed.  *Id.*  The sole issue of the appeal—given that it is undisputed that the time the automatic stay was in effect was excluded from the window of time available to the I.R.S.—was whether the period may also be tolled "because of any other proceedings in the bankruptcy court."  *Id*. at 557.  The I.R.S. argued that, in addition to the time the automatic stay was pending, it was also prevented from pursuing its claims during two other spans of time: (1) the period it was bound by terms of the Chapter 11 confirmed plan; and (2) the period its claim had been erroneously disallowed.

While the court chose not to reach the question of whether the limitations period was suspended during the time the plan was in effect, it did find that the statute of limitations was tolled during the time the I.R.S. claims were disallowed, even though the debtors had argued that

11

"suspending the applicable statute of limitations during any period beyond that when the automatic stay is in place would erode the three year rule." *Id.* at 557.  Noting that the I.R.S. "was equally barred from acting when the disallowance was in place as it was when its claims were stayed," *id*. at 558, the Seventh Circuit rejected the debtors' strict reading of § 108(c):

> We disagree.  Nothing in § 108(c) or § 6503 restricts any tolling of nonbankruptcy statutes of limitations to the time a creditor is barred from acting because of the provisions of the automatic stay. . . .  [Section] 108(c) suspends nonbankruptcy statutes of limitations until the stay is lifted *or* the statute of limitations itself expires.

*Id*. at 557.

While the Seventh Circuit did not reach the question of whether the terms of the plan might also serve to toll the I.R.S.'s statute of limitations, and therefore provide a decision even more on point, this Court's reading of *Montoya* is that nothing forbids tolling above and beyond the extension provided for in § 108 as a result of the automatic stay.  Therefore, it is possible that other bankruptcy proceedings (aside from the automatic stay) may serve as an impediment to a claim such that further tolling of the statute of limitations, such as equitable tolling, may be appropriate.

**B. Is Equitable Tolling Warranted Under the Circumstances of this Case?**

Simply because this Court has concluded that § 108(c) does not foreclose any further tolling of a nonbankruptcy statute of limitations, it does not automatically follow that equitable tolling is appropriate under the circumstances of this case.

Equitable tolling of the 90-day period of limitation on the filing of an employment discrimination suit under Title VII is reserved for situations in which the claimant  has either (1) made a good faith error (e.g., brought the suit in the wrong court); or (2) has been prevented from filing in an extraordinary way." *Threadgill v. Moore U.S.A., Inc*., 269 F.3d 848, 850 (7th

Cir., 2001).  In general, "[t]he doctrine is straightforward: 'a person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so.'"  *Heck v. Humphrey*, 997 F.2d 355, 357 (7th Cir. 1993) (quoting *Central States, Southeast & Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1376 (7th Cir. 1992)).  However, "[t]here must be diligence, and the diligence must continue up to the time of suit . . . ."  *Heck*, 997 F.2d at 357.

In response to Keystone's hard-line argument that Neal was required to file her Title VII action within the time frame provided by 108(c), Neal argues that even after the automatic stay was lifted, she was enjoined by both the Plan and the Bankruptcy Code from bringing the lawsuit until the Bankruptcy Court lifted the injunction.  Citing cases in which the courts have held that an injunction preventing initiation of litigation provides the "extraordinary circumstances" to render equitable tolling appropriate,  Neal argues that the injunction in this case similarly prevented her from filing suit any earlier, and therefore the period of limitations should be tolled.  *See, e.g*., *United States use of Bernard Lumber Co. v. Lanier Gervais Corp*., 896 F.2d 162, 169 (5th Cir. 1990) (When "a party is forbidden by an injunction of a competent court to initiate litigation, that is the very essence of circumstances calling for equitable relief.  Nothing could be more *in* equitable, less equitable than to forfeit the legal rights of a party who is enjoined from bringing the legal action.").

Here, the Court finds that Neal has exercised due diligence in protecting her rights and preserving her Title VII claim, and the circumstances leading up to this proceeding are exceptional, such that equitable tolling is appropriate.  Neal timely filed her discrimination charge with the EEOC and, through no fault of her own, could not file her suit within 90 days of receiving the Notice of Right to Sue, due to Keystone's filing of a Chapter 11 bankruptcy.  She timely filed a proof of claim in Keystone's bankruptcy, and she timely filed a response when

Keystone objected to that claim, thus squarely placing the validity and amount of Neal's claim at issue in Keystone's bankruptcy proceeding.  Though the matter was "fully briefed" in December 2004, the matter was continued several times, and the first substantive hearing on the claim was not held until November 2005, after the plan was confirmed and the injunction was therefore in place.  Keystone has not argued that repeated continuances were a result of any conduct of Neal.  At the November 2005 hearing, the parties reported that they were actively attempting to reach a settlement with respect to the amount of the claim.  The matter was continued in the bankruptcy court several more times in order to facilitate settlement.

When the parties announced in May 2006 that they could not reach an agreement regarding the amount of Neal's claim, Keystone argued that Neal should be judicially estopped from asserting a claim in Keystone's bankruptcy.  The briefing and resolution of that argument delayed the matter until September 1, 2006.  Within weeks of the bankruptcy court's ruling that Neal's claim was allowed, Neal filed a Motion to Transfer and Lift the Injunction so that a district court could decide the proper dollar amount, if any, to be assigned Neal's claim, given the parties' inability to settle that issue.  Less than a month after the Bankruptcy Court determined that lifting the injunction for liquidation purposes was the proper course, Neal filed the instant action.

Nowhere in this chain of events has Neal "sat idly by" or failed to exercise diligence in attempting to secure adequate treatment of her claim within the restrictions of the bankruptcy proceedings.  All together, the repeated continuation of the objection to Neal's claim, the operation of the automatic stay and then the injunction under the Plan and § 524, the parties' lengthy settlement negotiations, and the time devoted to the resolution of Keystone's motion to bar Neal's claim, merit the application of equitable tolling.  The Court recognizes that once it has

identified those circumstances weighing in favor of equitable tolling, it must balance them

against any prejudice the delay might cause the defendant.  *Savory v. Lyons*, 469 F.3d 667, 673-

74 (7th Cir. 2006).  However, Keystone has not argued that it will be prejudiced be defending this

suit, which shall assign a value, if any, to Neal's claim.  Moreover, the chief function of statutes

of limitation is "to promote justice by preventing surprises of claims that have been allowed to

slumber . . . . The theory is that even if one has a just claim it is unjust not to put the adversary on

notice to defend within the period of limitation and that the right to be free of stale claims in time

comes to prevail over the right to prosecute them."  *Stephan v. Goldinger*, 325 F.3d 874, 876 (7th

Cir. 2003) (quoting *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S.

342 (1944)).  Keystone has long had thorough notice of Neal's claim, and having to defend a suit

liquidating the claim in district court is surely no surprise Keystone, who in December 2005,

threatened to force this result if the parties could not settle on the amount to be assigned to

Neal's claim.  Correspondence between counsel dated Dec. 16, 2005, Pl.'s Ex. 7., at 1.

Finally, Keystone argues that Neal failed to file her claim on a timely basis because she

was caught "trying to 'hide the ball' in her own personal bankruptcy."  Def.'s Mtn for Summ J.,

at 8.  While the Court is mindful that one of our oldest jurisprudential maxims instructs that "he

who seeks Equity must do Equity," Joseph Story, COMMENTARIES ON EQUITY JURISPRUDENCE

1:77 (1836), Keystone has failed to convince the Court that Neal's failure to list her Title VII

claim in her own bankruptcy was prompted by self-serving motives or bad faith, such that the

equities may not tip in her favor.  When confronted with this same argument by Keystone, the

bankruptcy court noted:

> [Neal] did not receive her Determination Letter from the EEOC until over a year
> after she obtained her discharge.  While not excusing the omission from the
> bankruptcy schedules – which require a debtor to list all claims, even those that
> are contingent and unliquidated – given the procedural posture of the claim at the

> time of the petition, [Neal] must have considered a recovery extremely remote
> and unlikely.  By the time the EEOC issued its Determination Letter over one
> year after she received her discharge, Keystone itself was in bankruptcy, and
> Clark's failure to reopen her own bankruptcy to schedule the claim simply does
> not smack of the same ulterior motivation apparent in [Keystone's cited
> authority].

Mem. Decision on Application of Judicial Estoppel to Claim No. 1285 Filed by Nicole Clark,

Pl.'s Ex. 3, at 6.  This Court agrees with the reasoning of the bankruptcy court and declines to

presume ill intent on Neal's part.  Keystone has presented no additional argument or evidence to

suggest that the error was not inadvertent.

Under the total circumstances of this case, the Court finds that Clark should not be

precluded from liquidating her claim in this Court and that the doctrine of equitable tolling

applies to extend the period of limitations in which she may properly file suit until 30 days after

the injunction was lifted.  As Neal's suit was timely filed under the circumstances, Keystone's

Motion for Summary Judgment is denied.

### MOTION TO STRIKE

Keystone has also filed a Motion to Strike Exhibit 7 in Support of Neal's Response to

Defendant's Motion for Summary Judgment.  Exhibit 7 is an e-mail from counsel for Keystone

to counsel for Neal, containing an offer of settlement with respect to the disputed dollar amount

of Neal's claim.  Across the top of the e-mail is a header, which states in bold, all-caps typeface:

"PRIVILEGED SETTLEMENT COMMUNICATION SUBJECT TO FED.R.EVID. 408 and

FED.R.BANKR.PRO. 9017."  Keystone argues that, under Federal Rule of Evidence 408, the

settlement offer is inadmissible and therefore should be stricken.

Rule 408 provides the following, with respect to offers to compromise:

> **(a) Prohibited uses**.—Evidence of the following is not admissible on behalf of
> any party, when offered to prove liability for, invalidity of, or amount of a claim
> that was offered to prove liability for, invalidity of, or amount of a claim that was

disputed as to validity or amount or to impeach through a prior inconsistent statement or contradiction:

> (1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

**(b) Permitted uses**.—This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Here, Neal's reliance on the correspondence is permissible under 408. Exhibit 7 confirms that the parties were in fact in settlement negotiation and has been offered to negate a contention of undue delay, one of the permissible uses explicitly listed in Rule 408(b). The exhibit also confirms that Keystone informed Neal that it could move to force Neal to liquidate her claim in federal or state court if they parties did not reach settlement. To the extent that Neal might have been offering the exhibit to prove liability or the amount of her claim, or for any other prohibited purpose, it has not been considered by the Court, nor will Neal be permitted to use the communication in the future for any of the purposes prohibited by Rule 408. Keystone's Motion to Strike is denied.

## CONCLUSION

For the above reasons, Keystone's Motion Summary Judgment [#12] and Motion to Strike [#18] are DENIED.

ENTERED this 24th day of August, 2007.

s/Michael M. Mihm
Michael M. Mihm
United States District Judge